IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION



FILED
NOV 13 2020
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

| | | |
|---|---|---|
| Alex W. Billups<br>13418 Lorenzo Ave.<br>Cleveland, OH 44120 | )<br>)<br>) | |
| | ) | CASE NO.: |
| Plaintiff, | )<br>) | 1:20 CV 2572 |
| | ) | JUDGE: |
| vs. | )<br>) | |
| | ) | JUDGE GWIN |
| Gerber Collision and Glass<br>5943 Mayfield Rd.<br>Mayfield Hts., OH 44124 | )<br>)<br>) | |
| | ) | COMPLAINT WITH JURY DEMAND |
| and | )<br>) | |
| | ) | |
| TRUE2FORM COLLISION REPAIR<br>CENTERS, LLC<br>400 WEST GRAND AVENUE<br>ELMHURST IL 60148, Agent | )<br>)<br>)<br>) | MAG. JUDGE GREENBERG |
| Defendant. | | |

**NATURE OF THE ACTION- PRELIMINARY STATEMENT**

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991, for injunctive and declaratory relief and money damages for Defendant's violations of the civil rights of Plaintiff, Alex W. Billups ("Billups").

2. Plaintiff has been denied terms, conditions and privileges of employment because of his race (African-American), disability, and in retaliation for his having engaged in protected activity.

**JURISDICTION AND VENUE**

1

3. This action is instituted and authorized under Section 706(f)(1) of Title VII of the Ohio Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2, et seq. and §102 of the Civil Rights Act of 1991, 42 U.S.C. §1981 (a). See attached Dismissal and Notice of Rights, which was received by Billups on or about August 22, 2020. (Exhibit A).

4. Jurisdiction of this Court to hear and determine these claims is based on 28 U.S.C. §1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

5. Supplemental and/or "pendant" jurisdiction is invoked pursuant to 28 U.S.C. §1367.

6. A declaratory judgment is sought pursuant to 28 U.S.C. §§ 2201§ and §§ 2202.

7. Venue is proper in this Court as all the acts complained of herein have occurred in Ohio, within the jurisdiction of this Court.

## PARTIES

**Plaintiff:**

8. Billups is an African-American male residing in Cleveland, Ohio, in the county of Cuyahoga and was over the age of majority at all relevant times. Billups was hired by Gerber Collision and Glass ("Gerber") on August 22, 2016 as a Heavy Collision Technician. At all relevant times herein, the Plaintiff was an employee of the Defendant and is an employee as defined in Title VII of the Civil Rights Act of 1964, as amended and codified in 42 U.S.C. 2000e(b), et seq.; the Ohio Civil Rights Act as amended and codified in the Ohio Revised Code Chapter 4112;. The Americans with Disabilities Act, as amended and codified in 42 U.S. C. § 12101 et seq.

**Defendant:**

9. Gerber is an employer engaged in the business of auto body repair and is located in Cuyahoga County, Ohio. According to the Ohio Secretary of State, the Defendant's Registered Statutory Agent is TRUE2FORM COLLISION REPAIR CENTERS LLC, 400 WEST GRAND AVENUE, ELMHURST, IL 60126.

10. Gerber maintains corporate policies it claims prohibit Gerber and its' employees from discriminating against other employees based on race, disability, and retaliation, among other bases.

## STATEMENT OF FACTS

**Background**

11. Billups is an African-American male residing in Cleveland, Ohio. Gerber hired Billups on August 22, 2016 in the capacity of Heavy Collision Technician at the pay rate of $15.00 per hour. Billups held that position until his employment was unlawfully terminated on May 22, 2017.

12. On January 7, 2017 Billups was involved in a car accident, exacerbating his disability condition.

13. On February 7, 2017 Billups went to a doctor, who gave Billups a written request for accommodations: time off for therapy and hospital visits and to be able to keep work material closer to his workstation.

14. Billups presented the accommodations letter to Tom Deacon, Caucasian, the next day, February 8, 2017. Billups also faxed the accommodations letter to Berger's HR on February 8, 2017. Deacon said he would look into it. Later Berger offered to move Billups' toolbox to another area of the shop, which would have made things worse for Billups because he would have had to walk significantly further to do his job every day while carrying tools. Billups told his supervisors

about this and they said they would get back to him. It was never discussed again.

15. Berger allowed Al Myers, a Caucasian male, the same accommodation of keeping materials closer without a problem.

16. On March 2, 2017 Billups left work because there was no work to do. Billups left a note explaining why he left. Billups knew of no policy that would have prevented him from leaving.

17. On March 3, 2017 Billups complained to Deacon, telling him that work assignments were not being passed out fairly, and was told to shut up and do his work, that he (Deacon) decides who gets what around there.

18. Billups then called Max Dunn and left a voicemail. Then Billups called George Minehart and reported what had happened. Minehart stated that they would investigate it. Dunn called Billups back and also stated that Berger would investigate it.

19. Later that same day, Deacon presented Billups with an attendance write up for leaving the previous day.

20. A few days later, Dunn called Billups and told him that he had talked to Deacon and Deacon told him he had apologized to Billups. Billups informed Dunn that Deacon had never apologized.

21. Within two weeks following the Billups' complaint to Minehart and Dunn, Deacon began falsely and maliciously being hypercritical of Billups' work, knit-picking and fabricating issues with Billups' work.

22. Dan Evans, Caucasian male, Al Myers, Caucasian male, and Ray Matocke, Caucasian male, were all hired after Billups and were all hired at a higher flat rate than Billups.

23. On March 15, 2020 (approximately) Billups learned about the pay discrepancy because he mistakenly received Myers' paystub one day. Billups then asked the three about it and they all admitted that they made more than $15/hr. Billups was far more experienced than all three of them, particularly so because he owned and operated his own body repair shop from 1989 to 2005. Billups has been doing bodywork since 1976 exclusively.

24. Billups confronted Deacon about the pay discrepancy, Deacon responded again that it was his decision to make. Billups called Minehart and reported the pay discrepancy to him, and Minehart said he would get back to Billups, but never did.

25. Deacon resigned in early April, and was replaced by Jay Poole, Caucasian male. From the day Poole began at the location, he watched Billups closely, examining his work and watching Billups from around corners.

26. On May 19, 2017 Billups completed work on two cars and had them signed off on by Poole on that day. By signing off on the two cars, Poole indicated that he had examined Billups' work on the cars and that the work was done to his satisfaction. Billups was then sent home because there was no further work that day.

27. On May 22, 2017 Billups arrived at work and stopped to tell Poole that he would need time off for a doctor's appointment. At that point Poole told Billups he does not seem happy there. Billups replied that he was not happy with the way

the white guys are getting preferential treatment. Poole asked Billups why he did not quit, and Billups told him he was not going to quit that as Berger would have to fire him. Poole told Billups to go out to his workspace and not talk to anyone.

28. Poole then came out to Billups and handed him a pink slip which indicated an issue with the two cars from the prior Friday, specifically a scratch on a step pad.

29. Billups had received no progressive discipline to that point. Other, non-African-American employees had done other, worse work infractions, and had not been written up or terminated.

## STATEMENT OF CLAIMS

### COUNT 1-TITLE VII- RACE DISCRIMINATION

30. Billups hereby reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

31. Billups was, at all times relevant a member of the protected class, African-American.

32. Billups suffered an adverse employment action when he was terminated on May 22, 2017. Billups timely filed a charge of employment discrimination with the EEOC on August 3, 2017.

33. Billups was qualified for the position. Billups had extensive experience in bodywork prior to getting hired at Gerber. Prior to his termination, Billups's qualifications were never called into question.

34. From Billups's hire date of August 22, 2016 through the date of his termination on May 22, 2017, Billups had no issues brought to his attention regarding his performance or any other aspect of his job.

35. Beginning on the date of his hire, Billups was treated differently than similarly situated, non-protected employees. At all times relevant, Billups was paid less than his less experienced Caucasian counterparts.

36. For the foregoing reasons Billups has been discriminated against based on his race in violation of Title VII of the Civil Rights Act of 1964 as amended in 1972.

## COUNT 2 – DISABILITY DISCRIMINATION

37. Billups hereby reasserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

38. In order to prove a case of disability discrimination, a claimant must prove 1) the plaintiff was protected under the ADA; 2) the defendant knew the plaintiff was protected; 3) the defendant took an adverse action against the plaintiff; and 4) there was a causal connection between the adverse action and the plaintiff's protected status

39. Billups suffers a disability as defined by 42 U.S.C. § 12102 of the Americans with Disabilities Act ("ADA"). On February 8, 2017 Billups advised Gerber in writing that he was suffering from a qualifying disability and requested reasonable accommodations.

40. Gerber knew of Billups' disability.

41. Following Billups request for accommodations, Gerber terminated Billups employment on May 22, 2017. Billups was fully qualified for his position at all relevant times and

could perform the essential functions of his job with or without reasonable accommodation.

42. The short amount of time lapsed between Billups' request for accommodations and his termination presents a strong causal connection between Billups' disability and his termination by Berger. Berger terminated Billups in violation of 42 U.S.C. § 12112 et seq.

43. Based on the above, Billups has been discriminated against based on his disability, and has suffered and continues to suffer damages in an amount not presently calculatable, but in an amount to be determined at trial.

### COUNT 3 - RETALIATION

44. Billups hereby asserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

45. Billups engaged in a protected activity by reporting discriminatory work practices and requesting reasonable accommodations for his disability.

46. Following Billups's protected activity, the Defendant took action, which was materially adverse to Billups. On May 22, 2017, Defendants terminated Billups's employment, citing poor work performance. This was the first mention whatsoever of poor work performance on Billups' part. There are no prior coachings or disciplines in Billups' employment file, which support such assertions warranting his termination.

47. A causal connection exists between the protected activity and the materially adverse action.

48. Billups, after his protected activity, received unfavorable disciplinary performance write-ups or poor performance reviews.

8

49. For the foregoing reasons Billups has been discriminated against based on retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

## COUNT 4-42 U.S.C. § 1981

50. Billups hereby asserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

51. Billups belongs to an identifiable class of persons who are subject to discrimination based on their race.

52. Berger intended to discriminate against Billups on the basis of race.

53. Berger's discriminatory conduct abridged a right enumerated in U.S.C. § 1981 (a).

54. All of the actions and inactions articulated above violate the Civil Rights Acts of 1866 and 1870, embodied in 42 U.S.C. § 1981, which statute clearly guarantees that all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. This statute further indicates that the phrase "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. This statute further and clearly spells out that these rights are protected against impairment by non-governmental discrimination and impairment under color of state law.

55. As a direct and proximate result of the above-described actions and/or inactions, Billups hereby reasserts the foregoing allegations and incorporates and incorporates them by

reference as if fully set forth herein. Billups has suffered and will continue to suffer from various emotional damages.

56. Billups states that as a direct and proximate result of the intentional and malicious and/or wanton and reckless actions and/or in actions of Gerber that he has suffered severe and significant emotional distress, anxiety, and anguish, and will continue to suffer from emotional distress into the indefinite future.

57. These actions and/or inactions by Gerber were based on Billups' race and/or in retaliation for having participated in protective activity, all of which is in clear violation of 42 U.S.C. § 1981.

58. The actions and inactions complained of above entitle Billups to damages for lost wages and/or back pay, front pay, emotional distress, the costs of this litigation and attorney fees, pursuant to 42 U.S.C. § 1981 as well as under 42 U.S.C. § 1988.

59. The actions and inactions complained of were so egregious, intentional, willful and despicable, and were perpetrated against Billups with such disregard for his federally protected rights, as well those protected by Ohio law, that Gerber must be required to pay an amount of punitive damages such that Gerber will be forced to follow the law and to ensure a workplace free from discrimination.

## COUNT 5

### (RACE DISCRIMINATION – R.C. 4112.02 & 4112.99.)

60. Billups fully incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten herein.

61. Billups is an African American male, and a member of a protected class.

62. Plaintiff was fully qualified for his position at all relevant times herein.

63. Berger fired Billups and subjected him to a hostile work environment during his employment because he is an African American.

64. Berger's termination permitted the hiring and/or retention of white employees.

65. Berger was treated differently than other similarly situated white employees who are not members of her protective class.

66. Berger's conduct was intentional, willful, wanton and malicious.

67. As a direct and proximate cause of the Defendant's actions, Billups has suffered harm, including but not limited to front pay, back pay, emotional harm, compensatory damages, and attorney's fees and is entitled to judgment as a matter of law.

68. Thus, Berger seeks all compensatory and punitive damages allowed by law.

## COUNT 6-Intentional Infliction of Emotional Distress

69. Billups hereby asserts the foregoing allegations and incorporates them by reference as if fully set forth herein.

71. The actions and inactions of Berger were so outrageous in character and to so extreme a agree, that the conduct goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community.

72. As a direct and proximate cause of Berger's actions, Billups has suffered emotional harm and is entitled to judgment as a matter of law.

73. Billups seeks therefore compensatory and punitive damages allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court:

a. Declare the policies and practices of Gerber, as described herein, to be unlawful and in violation of federal law;

b. Grant Plaintiff a permanent injunction, prohibiting Gerber from engaging in any policy or practice which discriminates on the basis of race, disability, and/or retaliation;

c. Order Gerber to make Billups whole, with appropriate backpay, front pay and benefits in amounts in excess of $25, 000.00 to be determined at trial;

d. Award compensatory and emotional distress damages to Billups, in an amount to be proven at trial;

e. Order Gerber to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from Gerber's unlawful employment practices;

f. Order Gerber to make Plaintiff whole by providing employment, seniority, and affirmative relief necessary to eradicate the effects of Gerber's unlawful employment practices;

g. Award Plaintiff pre-judgment and post-judgment interest on all sums awarded;

h. Award Plaintiff the costs of this action, including costs and reasonable attorney fees; and

i. Grant such other legal and equitable relief as is necessary and proper.

## JURY DEMAND

Plaintiff demands a trial by a jury of his peers on all triable issues herein.

Respectfully submitted,

*/s/ Alex W. Billups*

Alex W. Billups, pro se